**PACIFIC FM, INCORPORATED,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**

Marin Broadcasting Co., Inc., Intervenor.

No. 19710.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1966.

Decided April 14, 1966.

Mr. Robert L. Heald, Washington, D. C., with whom Mr. Edward F. Kenehan, Washington, D. C., was on the brief, for appellant.

Mr. Robert D. Hadl, Counsel, F.C.C., with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F.C.C., were on the brief, for appellee.

Messrs. Robert M. Booth, Jr., and Joseph F. Hennessey, Washington, D. C., entered appearances for intervenor.

Before BAZELON, Chief Judge, and FAHY and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

The Federal Communications Commission order under review authorized without hearing an increase in power by Station KTIM-FM in San Raphael, California. Appellant, Pacific FM, Incor-

porated, is another FM licensee in the area (Station KPEN). It had opposed the increase on the ground of resulting interference with its signal, and had asked the Commission to set the matter for hearing. For the reasons appearing hereinafter, we leave the Commission's order undisturbed.

## I

In 1961 the FCC instituted rule-making proceedings addressed to the allocation of FM licenses. The effect of its First and Second Reports was to create minimum mileage separations between FM transmitter sites. Short-spaced stations were, thus, defined as those stations already in being which were closer together than would be permitted in respect of stations to be built in the future. The Commission's Third Report embodied a final table of assignments for FM stations, but reserved for further investigation the problem of power increases as between existing short-spaced stations.

By a notice of rule-making issued February 3, 1964, the Commission instituted its inquiry into this last problem. Appellant appeared in this proceeding and participated in it throughout. FM stations are classified as A, B, or C stations, depending upon the nature of the area they serve. Class A stations are provided for small towns and the surrounding rural areas. Class B and Class C stations serve progressively larger communities, and are higher in power. The Commission's concern was that many Class A stations appeared to lack the power required to serve their own areas adequately. The danger in permitting power increases to these stations was that they might begin to interfere unduly with the signals of Class B and C stations.

In its Fourth Report and Order, issued October 19, 1964, the Commission decided that the dangers did not outweigh the benefits to be derived from strengthening the Class A stations. FM stations exist on either the same channel, or on adjacent channels of differing degrees of remoteness. The rules promulgated by the Commission provided, among other things, that a Class A station, short-spaced in relation to a Class B or C station, could increase its power if the Class B or C station was on a second or third adjacent channel, as distinct from the same channel or one immediately adjacent.

This rule, as the Commission recognized, might in some cases result in interference with the signal of the Class B or C station. In Paragraph 36 of the Fourth Report, the Commission said this:

"For reasons stated at length above, we are of the view that the opportunity afforded by the plan adopted herein for increases in facilities and over-all improvement in service is clearly in the public interest, and that the benefits therefrom outweigh the relatively small amounts of interference which will usually result. As mentioned, it appears that only in relatively few cases would interference be caused within an existing station's 1 mv/m contour. In the Third Further Notice we tentatively discussed the rights of FM licensees to object to applications for increased facilities by short-spaced stations on the grounds that such proposals would cause interference within their 1 mv/m contours. (See footnote 5, Third Further Notice.) On reflection, we have decided not to attempt to resolve the rights of such objectors at this time. They instead will be resolved if presented in a specific case."

The reference in Paragraph 36 to footnote 5 of the notice of rule-making renders that footnote of importance. Its text is as follows:

"5 The question of power increases for existing short-spaced stations was raised in several petitions for reconsideration of the 'First Report and Order' in this Docket. In the 'Third Report, Memorandum Opinion and Order', we noted specifically that this question was being left open. Therefore, the only rights that short-spaced existing stations may claim under Sec-

tion 316 of the Communications Act (with respect to each other), are to protection of the 1 mv/m contour—the generally recognized standard prior to institution of proceedings in this Docket. In the event that an existing station would suffer interference within its 1 mv/m contour from a power increase of another existing station * * * the power increase would be made effective immediately only if (a) the consent of the existing station receiving interference were obtained, or, (b) the license of the interfered-with station had been renewed since the adoption of these proposed rules. In all other cases where interference would be caused within the 1 mv/m contour of an existing station by an increase in the facilities of another existing station, the effective date of the authorization for increased facilities will be postponed until the termination of the current license period for the interfered-with station. At that point, no rights to an adjudicatory hearing under Section 316 of the Communications Act would accrue. Transcontinent Television Corp. v. F.C.C., 113 U.S.App.D.C. 384, 308 F.2d 339 (1962); The Goodwill Stations, Inc. v. F.C.C., 117 U.S.App.D.C. 64, 325 F.2d 637, (Case No. 17498, decided October 31, 1963)."

Appellant, Station KPEN, is a Class B station which is located 20.8 miles away from the intervenor, KTIM, a Class A station. They are, thus, short-spaced stations *vis-a-vis* each other under the Commission's rules, which call for a minimum distance of 40 miles in the case of all new stations. They operate on channels which are at the second remove from each other. The increase in power sought by KTIM was within the limits prescribed by rule for Class A stations.

KTIM, on March 18, 1965, applied for increased power under the new rules. There being no objection filed by anyone, the application was granted on April 30 following. On the succeeding June 1, however, Station KPEN petitioned for reconsideration. It asked that the grant be set aside and the application be set for hearing. It alleged not only that the grant was contrary to the public interest, but that it would create interference constituting a modification of KPEN's license. It pointed out that under Section 316(a) of the Act, quoted in the margin, an existing license cannot be modified without hearing.[1]

The order under review was issued September 2, 1965. In it the Commission conceded that a license modification was involved which, as to KPEN's current license, could not be effected without hearing. Accordingly, it vacated its earlier grant to KTIM, and then granted the license anew, effective December 2, 1965, the day after KPEN's license was to expire. The Commission expressed the view that the new grant would not in legal contemplation constitute a modification of KPEN's license as of the prescribed date for its effectiveness. The Commission also purported to examine KPEN's allegations as to the merits, and concluded that they were not persuasive.

On the same day that the Commission issued this order, it received KPEN's license renewal application. That application was granted on November 5, 1965, effective December 1, 1965. In accordance with the usual practice, the new

1. "Any station license or construction permit may be modified by the Commission either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this Act or of any treaty ratified by the United States will be more fully complied with. No such order of modification shall become final until the holder of the license or permit shall have been notified in writing of the proposed action and the grounds and reasons therefor, and shall have been given reasonable opportunity, in no event less than thirty days, to show cause by public hearing, if requested, why such order of modification should not issue: *Provided,* That where safety of life or property is involved, the Commission may by order provide for a shorter period of notice." 47 U.S.C. § 316(a) (1964).

license was made expressly subject to the Communications Act and to the Commission's rules thereunder.

## II

The error claimed by appellant is that the Commission's order authorizing the increase in KTIM's power modifies KPEN's license without the hearing required by Section 316 of the Act. It is the Commission's contention that, however much this claim may have had merit as to the KPEN license in effect prior to December 1, 1965, it fails insofar as it is pressed with respect to the KPEN license as renewed on that date. By revoking its first grant of increased power to KTIM, and by making its new grant effective after December 1, 1965, the Commission thinks to have eliminated the modification issue under our decisions in Transcontinent Television Corp. v. F.C.C., 113 U.S.App.D.C. 384, 308 F.2d 339 (1962), and The Goodwill Stations, Inc. v. F.C.C., 117 U.S.App.D.C. 64, 325 F.2d 637 (1963).

There is no controversy before us as to the accuracy of the Commission's reading of those cases. Appellant freely admits that, but for the language of reservation contained in Paragraph 36 of the Fourth Report, its claim of license modification would be unavailing inasmuch as its license dating from December 2, 1965, is subject to the Commission's rules in effect on that date. Its contention is that there was no such rule relating to this power increase; and it points to Paragraph 36 as exhibiting the Commission's purpose to forego a rule on the subject and, instead, to determine the issues on a case-by-case basis. It asserts that, had the Commission's purpose been otherwise, it would, as a participant in the rule-making proceeding, have challenged in the courts any rule of the character the Commission now claims to have adopted.

We are not persuaded that the Commission's reading of its Fourth Report and Order is erroneous. It seems beyond peradventure that the Commission did make a rule authorizing power increases to short-spaced stations as against protestants on second or third adjacent channels.[2] The meaning and purpose of Paragraph 36 are to be ascertained by reference to footnote 5 in the notice of rule-making which instituted the proceeding, and which Paragraph 36 identifies in terms as its frame of reference. Footnote 5 addresses itself to the precise problem of when a power increase authorized by rule can, without hearing and adjudication, be made effective as against a protestant who asserts that the interference entailed modifies his license. The notice recognizes in terms that no rule to be made in the proceeding can operate to make power increases effective *immediately* unless the consent of the protestant is obtained or its license has been renewed after the adoption of the rule. In all other cases the increase must, if hearing and adjudication are not to be had, await the expiration of the protestant's current license.

The very purpose of footnote 5, included as it was in the notice of rule-making, was to point out that any rule relating to power increases which might come out of the proceeding could only operate in this fashion, that is to say, license modification protests would have to be heard and adjudicated on an individual case basis where the license interfered with had not been renewed after the promulgation of the rule. By the same token, the rule could be applied without hearing *vis-a-vis* licenses which had been renewed after the rule's effective date.

It is, of course, true that this would have been the legal situation in any event, and there was perhaps no real

---

2. Included in the rules promulgated by the Fourth Report and Order is the following, 47 C.F.R. 73.213(d):
   "Stations will be authorized maximum facilities for their class in those directions in which they are short-spaced to other stations on second or third adjacent channels."

necessity for the inclusion of Paragraph 36. But it will be noted that, in Paragraph 36 itself, the Commission says that in footnote 5 of the notice it had only "tentatively discussed" the rights of current licensees claiming license modifications. Paragraph 36 appears, thus, to be the Commission's definitive recognition, stated in conjunction with the promulgation of the substantive rule itself, that protesting licensees holding as yet unrenewed licenses would have to be heard on an individual case basis if the power increase was to be permitted before the expiration date of the license receiving the interference. Paragraph 36 may be something less than a model of the expository art, but, of the alternative interpretations pressed upon us, it is the Commission's which is the more compelling.

The Commission's action here in going ahead to examine, albeit on an *ex parte* basis, the merits of appellant's protests may or may not reflect a certain unease about the elliptical nature of Paragraph 36 and the extent to which it could perhaps confuse a licensee situated as was appellant. We do not pass upon the soundness of the Commission's conclusions in this respect inasmuch as they were propounded as a matter of grace only and without the underpinning of a hearing. There is, of course, a certain grudging quality about volunteering to pass upon another's arguments but not to hear his version of the facts. But whether, under the circumstances the Commission's act of grace might have included a hearing remains a matter of policy entrusted to it and not to us.

Affirmed.

BAZELON, Chief Judge (concurring):

I agree to affirmance but for different reasons.

My brethren read paragraph 36 of the Commission's Fourth Report and Order as merely reflecting our decision in Transcontinent Television Corp. v. F.C.C.,[1] that a licensed petitioner is entitled to a modification hearing only if its license has not been renewed since the promulgation of the Commission's new regulations. I do not read paragraph 36 so narrowly, nor do I think the Commission did, though I agree the orders are not models of clarity.

The majority refer to footnote 5[2] of the Commission's Third Further Notice in ascertaining the meaning and purpose of paragraph 36. In this footnote the Commission undertook to allow power increases to Class A stations over objection only after "the termination of the current license period for the interfered-with station." But in paragraph 36 of the Fourth Order the Commission stated:

In the Third Further Notice we tentatively discussed the rights of FM licensees to object to applications for increased facilities * * *. (See footnote 5 * * *.) On reflection, we have decided not to attempt to resolve the rights of such objectors at this time. They instead will be resolved if presented in a specific case.

Thus it seems that "on reflection" footnote 5 was put aside.

Furthermore, the order under review states:

In paragraph 36 of the *Fourth Report and Order* we reserved judgment on the right of an existing licensee to object to such interference. An existing station takes renewal of its license subject to the rules then in effect, and were it not for the statement in paragraph 36, licensees would not be heard to complain of interference against which they no longer were protected since with the change in the rules such interference no longer constituted a modification of license.

The Commission postponed the grant until renewal, and said:

At that time, Pacific's right to *demand* a hearing because the application

1. 113 U.S.App.D.C. 384, 308 F.2d 339 (1962).

2. The complete text of this footnote can be found on p. 1019 of the majority opinion.

works a modification of its license will no longer exist. *But, as indicated by paragraph 36 of the Fourth Report and Order, it was not the Commission's intention to foreclose inquiry into the impact of 1 mv/m interference upon renewal of the interfered-with station's license.* [Emphasis added.]

For me all of the foregoing adds up to the following. The Commission, by holding extensive hearings on the desirability of the proposed rule allowing all short-spaced stations a power increase when requested and then delaying the grant of such increase until the renewal of an objector's license, could and did avoid the necessity of granting a license-modification hearing. It nevertheless expressed a willingness to examine particular claims of undue interference. It is conceivable that there may be cases where this interference will be significant, as where a number of short-spaced Class A stations, if granted power increases, would cause substantial injury to a larger station in the area.

The Commission's willingness to examine such questions reflects a sensitive regard for the public interest and will not greatly add to the Commission's burden. It recognized "that only in relatively few cases would interference be caused with-

in an existing station's 1 mv/m contour." Having already heard general objections to its rule, however, the Commission here had a broad discretion to determine whether any further hearings were required on the exemption claim.[3]

Petitioner sought an evidentiary hearing to prove that it would suffer greater interference than the Commission's normal theoretical calculations would suggest, by establishing that spot tests showed petitioner's signal was weaker than its rating and that the atypical terrain in the area had distorted the figures on which KTIM's antenna height was based. The Commission rejected this proffer, holding:

> Even if Pacific had stated when, where and by whom the spot measurements had been made, such measurements are not considered to be an acceptable substitute for theoretical computations based on the prediction method specified in the Commission's Rules.

The Commission also found that the regulations concerning KTIM's antenna height, and therefore the reach of its signal, made no provision for considering the type of information petitioner offered to present. I cannot say that a hearing is reasonably required in these circumstances.

3. "As the Commission has promulgated its Rules after extensive administrative hearings, it is necessary for the accompanying papers to set forth reasons, sufficient if true, to justify a change or waiver of the Rules. We do not think

Congress intended the Commission to waste time on applications that do not state a valid basis for a hearing." United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 771, 100 L.Ed. 1081 (1956).