**BUCKLEY–JAEGER BROADCASTING CORPORATION OF CALIFOR-NIA, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION, Appellee.**

**BUCKLEY–JAEGER BROADCASTING CORPORATION OF CALIFOR-NIA, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION, United States of America, Respondents.**

Nos. 21017, 21018.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 9, 1967.

Decided May 3, 1968.

Mr. Ben C. Fisher, Washington, D. C., with whom Mr. Peter Sevareid, Washington, D. C., was on the brief, for appellant in No. 21,017 and petitioner in No. 21,018.

Mr. William L. Fishman, Counsel, Federal Communications Commission, with whom Mr. Donald F. Turner, Asst. Atty. Gen., Mr. Henry Geller, General Counsel,

and Mr. John H. Conlin, Associate Gen. Counsel, Federal Communications Commission, were on the brief, for appellee in No. 21,017 and respondents in No. 21,-018. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, also entered an appearance for appellee in No. 21,017 and respondent Federal Communications Commission in No. 21,-018. Mr. Howard E. Shapiro, Atty. Department of Justice, also entered an appearance for respondent United States of America in No. 21,018.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and BURGER, Circuit Judge.

BURGER, Circuit Judge:

This is an appeal from the action of the Federal Communications Commission denying Appellant's request for exemption from the requirements of a Commission rule, 47 C.F.R. § 73.242 (1967). Appellant operates stations KKHI–AM and KKHI–FM in San Francisco, both of which program classical music exclusively. As owner of both stations, Appellant sought waiver of the Commission rule prohibiting 100 per cent duplication of program formats on both stations so that it could broadcast the same program simultaneously on the AM and FM channels.

The Commission rule, 47 C.F.R. § 73.-242 (1967), promulgated after extensive consideration,[1] provides in part:

After October 15, 1965, licensees of FM stations in cities of over 100,000 population * * * shall operate so as to devote no more than 50 percent of the average FM broadcast week to programs duplicated from an AM station owned by the same licensee in the same local area. For the purposes of this paragraph, duplication is defined to mean simultaneous broadcasting of

a particular program over both the AM and FM station or the broadcast of a particular FM program within 24 hours before or after the identical program is broadcast over the AM station. The rule also contemplates an exemption:

Upon a substantial showing that continued program duplication over a particular station would better serve the public interest than immediate non-duplication, a licensee may be granted a temporary exemption from the requirements of [the rule].

47 C.F.R. § 73.242(c) (1967).

Appellant filed a request for exemption from the rule pursuant to the above provision from the effective date of the rule, August 1, 1965, through the term of its existing license, December 1, 1965. Appellant requested a further waiver of the rule for the full three year term of its license commencing December 1, 1965, coupling the request with its renewal application and seeking a hearing if the Commission did not grant the exemption on the pleadings. In support of its request Appellant marshalled impressive evidence that (1) its AM/FM duplication of classical music was the only fulltime operation of this character in the Bay area; (2) surveys demonstrated that the listening audience did not wish modification of the present duplication; (3) the listening audience was not "divisible" because listeners turned to AM or FM depending on their location (i. e., home or car); (4) the introduction of a non-classical format would be wasteful and disruptive; (5) the cost of independent programming would be prohibitive; and (6) the Commission had no authority to compel nonduplication since the selection of programming was within the exclusive judgment of the licensee.

The Commission granted Appellant's renewal application "without prejudice" to a later ruling on the exemption re-

---

1. The history is set forth in Notice of Proposed Rule Making in Docket No. 15084, 25 PIKE & FISCHER, R.R. 1615 (1963). The adoption of the rule and its rational is found in AM Station Assignment Standards, 29 Fed.Reg. 9492 (1964).

quest. Appellant protested the renewal in this form. It argued that, under 47 U.S.C. § 309(e) (1964) and 47 C.F.R. § 1.110 (1967), concerning partial grants, the action of the Commission constituted a denial of the renewal application as filed, thus entitling Appellant to a hearing.

Subsequently the Commission disposed of some 115 requests for exemption which were pending, including that of Appellant. Without ruling on Appellant's other contentions, the Commission found that Appellant had made a sufficient economic showing to justify further exemption until April, 1967. In the Matter of Requests for Exemption From or Waiver of the Provisions of Section 73.242 of the Commission's Rules, 2 F.C.C.2d 833 (1966).

Pursuant to this Order and prior to its termination date, Appellant renewed its request for further exemption for the period of its license grant, alleging the same factors it previously presented. Appellant also requested a hearing if the Commission was not persuaded to grant the waiver. The Commission, after consideration of the facts and arguments presented, concluded that further exemption was not warranted. In the Matter of Requests for Exemption From or Waiver of the Provisions of Section 73.-242 of the Commission's Rules, 8 F.C.C. 2d 1, 2–5 (1967). The Commission also denied Appellant's request for a hearing. *Ibid.* It is from these rulings that Appellant appeals. The Commission's denial rested for the most part on general considerations previously discussed in the earlier proceeding wherein Appellant received a temporary economic waiver.

In the earlier proceeding, twelve requests, including that of Appellant, were granted for economic reasons. Twenty-seven exemptions were granted on a long-term basis to FM stations which were associated with AM stations wherein the latter were daytime only operations. Three other exemptions on a long-term basis were granted. One was to WHOM–FM, New York City, because of daytime coverage difference and programming of a unique, all foreign language, format. The other two exemptions were to stations in Puerto Rico because of the need for use of the FM signal to transmit to stations on the other side of the island for rebroadcast. 2 F.C.C.2d at 834–835.

The Commission also made several general observations concerning the rule. It noted, for example, that the rule still permits duplication of fifty percent of the average annual number of broadcast hours, that licensees retained a very great degree of flexibility for compliance with the rule, and that technical daytime coverage differences were factors meriting exemption. Moreover, on the subject of programming the Commission made the following observations:

We do not here grant any exemptions on programming grounds alone. To do so would require a searching inquiry into and evaluation of the character, merit, popularity, and "uniqueness" of the station's programming—a task we believe difficult and perhaps impossible, and in any event undesirable. It would be difficult, if not impossible, to arrive at any significant standards on which to base such a decision, since every station differs to some degree from every other station. Moreover, as mentioned before, the rule requires only 50 percent non-duplication—thus permitting the simultaneous presentation of a large amount of programming if the broadcaster deems it particularly significant to the audience or the station—and the broadcaster retains complete flexibility in his approach to the nonduplication requirement. If he wishes, he may present on both stations programming of substantially the same character such as classical music, or he may change the format of one to something of a different type. However, we do take into account highly distinctive programming where it is present along with other factors as indicated above.

2 F.C.C.2d at 840. On this basis the Commission denied Appellant's renewed request for exemption. It recognized the quality of Appellant's programming but found no reason why such format could not be available on both stations after compliance with the rule. 8 F.C.C.2d at 4. In a footnote the Commission observed:

We note KKHI's assertions as to the "uniqueness" of its programming and assume it is of distinctive character. However, one other San Francisco station which petitioned for exemption (and received it because the associated AM station is daytime only), KDFC, advanced a classical format as one reason for its claim. There are other good-music stations in San Francisco. This illustrates the problem with granting exemption on the ground of "unique" programming; see 2 F.C.C.2d 840.

8 F.C.C.2d at 4 n. 5.

Appellant makes two claims on appeal. It first argues that, as a matter of law it was entitled to exemption from the non-duplication rule because AF–FM duplication is a reasonable exercise of licensee programming responsibility protected by 47 U.S.C. § 326 (1964), and the First Amendment. It is also argued that, while the rule is not invalid on these grounds because it provides for an exemption, Appellant's presentation clearly entitled it to the exemption. This showing consisted in the main, as we have noted, of evidence supporting Appellant's contention that its program format was truly unique, fully supported by KKHI's listening audience, and thereby met the public interest requisites of the exemption provision. Since the Commission thought otherwise our review is narrow; to determine whether the record reveals substantial evidence to support the Commission's finding.

The major premise on which the rule was postulated—wasteful frequency usage and loss of spectrum space—was clearly the kind of judgment entrusted by Congress to the Commission. It is true that the nonduplication rule requires that fifty percent of the FM format be programmed independently of the AM station. But we cannot agree that such a rule infringes on the licensee's choice of program format. For example, the same program could be taped and delayed for rebroadcast at a later time on the other station.

The economic arguments advanced by Appellant seem to have been considered by the Commission. Those which pertained to general economic problems necessitated by the rule had, of course, previously been rejected by the Commission. Those which directly involved Appellant had persuaded the Commission to grant a temporary exemption but Appellant did not submit the necessary financial statements required by the Commission to justify further economic exemption, and in passing on Appellant's request the Commission noted the continued improving FM financial picture.

Appellant's principal basis for waiver boils down to its alleged "unique" programming format and the wishes of its listening audience. But the Commission made it very clear in the first proceeding that it would not grant exemptions on programming grounds alone because of the difficulty and even impossibility of making an inquiry into and evaluation of a station's program format. The Commission's conclusion is based on reason and is within the scope of the authority vested in it.

Appellant contends that the Commission, while disavowing an inquiry into programming, had in fact made such an inquiry and granted an exemption to two stations on the basis of their unique programming. In one case, however, WHOM, the exemption was granted on dual grounds—the unique programming of WHOM because it was an all foreign language station *and* because substantial daytime and nighttime coverage differences were present. In the case of WEVD–FM, New York City, exemption was granted because of the unique pro-

gramming—foreign language, particularly Yiddish, *and* the fact that WEVD is a share-time station, sharing time on the frequency with two other stations which prevents it from operating during substantial portions of each day. In both of these cases it is clear that the exemption was based on the combination of unique programming and substantial technical problems. Indeed, the Commission in the earlier proceeding expressly stated that it would consider distinctive programming where it was presented along with the other important factors, *i. e.*, technical difficulties, 2 F.C.C.2d at 840. We think these cases are sufficiently distinguishable from Appellant's situation to warrant a different treatment. Moreover, where applicants sought exemption on only unique programming grounds, as Appellant did, the Commission has consistently refused to grant the exemption; it did so in cases regarding two other good music stations, WGMS–FM, Washington, D. C., and WQXR–FM, New York City, whose posture was similar if not identical to that of the Appellant.

■ Implicit in Appellant's contentions is an argument that if the rule was intended to cover exemptions only for economic considerations or technical difficulties, and programming could be considered only in conjunction with these two factors, the rule should so state rather than utilize the vague term, "public interest." Although it may well be that the rule could have been more precise, it is adequate and the Commission has given it a consistent interpretation. We are unable to perceive a basis for holding that the rule was improperly applied in Appellant's case.

■ Appellant's second contention is that it was entitled to a hearing on its exemption request, and that the Commission acted arbitrarily and capriciously in denying the hearing. We note that the exemption provision in the rule does not expressly contemplate hearings for waiver of the rule and none have thus far been granted. Here there had been a general rule-making proceeding followed by requests for waiver of the Commission's rule. The Commission found that Appellant had not made the substantial showing required to justify waiver of the rule and had not renewed its economic argument in support of a further extension of its existing waiver. In these circumstances we hold that the Commission acted within its discretion in refusing to grant a hearing. We think the doctrine articulated in United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S. Ct. 763, 100 L.Ed. 1081 (1956), and its progeny,[2] is applicable here. In *Storer* the Court said:

> As the Commission has promulgated its Rules after extensive administrative hearings, it is necessary for the accompanying papers to set forth reasons, sufficient if true, to justify a change or waiver of the Rules. We do not think Congress intended the Commission to waste time on applications that do not state a valid basis for a hearing.

*Id.* at 205, 76 S.Ct. at 771.

Measured against this standard, we conclude the Commission could reasonably deny the request for a hearing. Each of the contentions raised by Appellant had been considered, either in the general proceeding in which Appellant received its temporary economic exemption or in the final proceeding. In short, the Commission determined that Appellant had not met the requisite showing and denied the request without hearing.

■ Appellant also contends that it had a statutory right to a hearing on the

2. *E. g.*, Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964); Pacific FM, Inc. v. FCC, 123 U.S.App.D.C. 352, 359 F.2d 1018 (1966); American Airlines, Inc. v. C. A. B., 123 U.S.App.D.C. 310, 359 F.2d 624 (1966), cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1967).

exemption request which it coupled with its license renewal. The Commission aptly phrased its answer:

> This amounts to a contention that a licensee, by requesting waiver of any Commission rule is his renewal application, can obtain an evidentiary hearing on whether it should apply to him. Such an argument is clearly without substance.

8 F.C.C.2d at 4. Appellant relies upon 47 U.S.C. § 309(e) and 47 C.F.R. § 1.110 (1967). We find no support in either the statute or the rule for the proposition asserted and Appellant has not cited any authority in support. It is well-settled that the adoption of a rule in a proper proceeding results in its incorporation automatically into subsequent license renewals unless the Commission determines otherwise. Beloit Broadcasters, Inc. v. F. C. C., 125 U.S.App.D.C. 29, 365 F.2d 962 (1966). This principle is equally applicable to the situation here. Appellant received its renewal on the basis that continued duplication would serve the public interest, deferring for later consideration whether the rule should apply. Such action was clearly within the Commission's power and in no way violates the statutory right to a hearing.

It is also clear that section 1.110 of the Commission's rules has no application here. The rule concerns situations where the applicant receives less than a full authorization. But here Appellant received the full authorization to which it was entitled under the statute and rules. In these circumstances we do not believe the rule can reasonably be interpreted as making a hearing mandatory.

There are appealing arguments when we are confronted with a Commission action which seems to discourage a broadcaster who seeks to provide high quality programs which are unfortunately all too rare. But the choice is not ours if the decision is within the range of those entrusted by Congress to the Commission.

Affirmed.