399 F.2d 65
 76 P.U.R.3d 135
 BLACK HILLS VIDEO CORPORATION and Midwest Video Corporation,
Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
ALICE CABLE TELEVISION CORPORATION, etc., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
BUCKEYE CABLEVISION, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
MISSION CABLE TV, INC., et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 Nos. 18052, 18348, 18793, 18813, 18839.
 United States Court of Appeals Eighth Circuit.
 Aug. 7, 1968.
 
 Harry M. Plotkin, of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for petitioner Black Hills Video and Midwest Video; Wayne W. Owen and C. Hamilton Moses, of Moses, McClellan, Arnold, Owen & McDermott, Little Rock, Ark., and Max D. Paglin and philip R. Ehrenkranz, of Grove, Paglin, Jaskiewicz, Gilliam & Putbrese, Washington, D.C., on the briefs.
 John D. Matthews, of Dow, Lohnes & Albertson, Washington, D.C., for petitioner Alice Cable Television Corp.; Thomas W. Wilson and Richard F. Swift, Washington, D.C., of the same firm and Robert H. Young, of Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief.
 Henry Geller, General Counsel, Federal Communications Commission, Washington, D.C., for respondents; John H. Conlin, Associate General Counsel, and Lenore G. Ehrig, Counsel, Federal Communications Commission, Washington, D.C., and Donald F. Turner, Asst. Atty. Gen., and Lionel Kestenbaum and Howard E. Shapiro, Attys., Department of Justice, Washington, D.C., on the briefs.
 Bruce E. Lovett, Atty. for National Community Television Association, Inc., Washington, D.C., for intervenor National Community Television Assn., Inc.; Gary L. Christensen, Elk Point, S.D., and Robert D. L'Heureux, Washington, D.C., on the briefs.
 Ernest W. Jennes, of Covington & Burling, Washington, D.C., for intervenor Association of Maximum Service Telecasters, Inc.; John E. Vanderstar, Washington, D.C., on the Brief.
 Douglas A. Anello, Kenneth W. Gross and Mark E. Georgeou, Washington, D.C., for intervenor National Assn. of Broadcasters.
 Before VAN OOSTERHOUT, Chief Judge, and MATTHES and MEHAFFY, Circuit judges.
 VAN OOSTERHOUT, Chief Judge.
 
 
 1
 This proceeding involves petitions filed pursuant to 402(a) of the Communications Act of 1934 as amended (47 U.S.C. 402(a)), the Judicial Review Act, 5 U.S.C. 1031 et seq., and Rule 27 of the Rules of this court.[1] Petitioners seek review of: (1) Rules and regulations promulgated by the Federal Communications Commission (FCC) in its First Report and Order released on April 23, 1965,[2] relating to regulation of microwave fed community antenna television systems (CATV). (2) Rules and regulations promulgated by a Second Report and Order released on March 8, 1966, regulating all CATV systems including off-the-air as well as microwave systems.[3] (3) The Commission's January 5, 1967, order denying various petitions for reconsideration of the Second Report and Order.[4]
 
 
 2
 Seven petitioners, all CATV systems, have sought review of the above described Commission actions. Black Hills Video Corporation and Midwest Video Corporation sought review of the First and Second Report and Order and the denial of the petitions for reconsideration. (Cases No. 18,052 and No. 18,-348.)[5]
 
 
 3
 Buckeye Cablevision, Inc., Alice Cable Television Corporation, Mission Cable TV, Inc., Pacific Video Cable Co., and Trans Video Corp. all sought review of the Second Report and Order and the denial of the petitions for reconsideration in other circuits. These cases (No. 18,793, No. 18,813 and No. 18,839) were transferred to this circuit and consolidated with those originally filed in this court. National Community Television Association, Inc., a CATV trade association, intervened on behalf of the petitioners. National Association of Broadcasters and Association of Maximum Telecasters, Inc., intervened on behalf of the respondents.
 
 
 4
 Petitioner Black Hills Video Corporation has maintained since 1957 a microwave system which serves its affiliate Midwest Video Corporation at Rapid City, South Dakota, and other places. All other petitioners take their signals off-the-air and are not fed by microwave.
 
 
 5
 These cases were originally argued and submitted on October 16, 1967. On October 23, 1967, the Supreme Court granted certiorari in Southwestern Cable Co. v. United States, 9 Cir., 378 F.2d 118, in which case the Ninth Circuit held the FCC lacked jurisdiction or authority over CATV. The FCC in a letter to this court dated October 24, 1967, suggested that it might be desirable to withhold decision in these cases until the Supreme Court decided Southwestern Cable. Although such suggestion was opposed by petitioners, this court took the view that the decision in Southwestern Cable might well go far toward the disposition of these cases and hence withheld decision. United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001, was decided on June 10, 1968.
 
 
 6
 Description of CATV systems, covering both off-the-air and microwave fed types, the function of CATV and the history and the explosive development of CATV are fully discussed in the Supreme Court opinion in Southwestern Cable and in the First and Second Reports of the Commission, supra. Thus our discussion of background material will be confined to facts essential to the disposition of the issues presented.
 
 
 7
 The principal provisions of the regulations here under attack may be summarized as follows:
 
 
 8
 Section 74.1103(a), (b), (c) and (d), the carriage rule,[6] provides that on request a CATV system must carry the programs of local and nearby stations. A system of priorities between stations and exceptions thereto is set up to implement the general rules.
 
 
 9
 Section 74.1103(e), (f) and (g) constitutes the nonduplication rule. Under this rule a CATV cannot carry a program from one station on the same day that a higher priority station on the system is broadcasting the same program. There are specific exceptions provided.
 
 
 10
 Section 74.1105 requires notification of intention to commence service (or to add a new distant signal) to be served on the following: all licensees and permittees within whose Grade B contour the system will operate; the Commission; the licensee or permittee of any 100 watt or higher translator operating in the community; and area school superintendents if the CATV is going to import an educational channel into a community with an unoccupied educational allocation. Service cannot be commenced until thirty days after this notice is served.
 
 
 11
 Section 74.1107 requires an evidentiary hearing before a CATV system may bring a distant signal (the signal of a television station carried beyond the station's Grade B contour) into any community within the Grade A service area of a television station in one of the top 100 markets. Section 74.1107(d) grandfathers any signal which was being supplied by a CATV system to its subscribers on or before February 15, 1966. A grandfathered system cannot extend service into 'new geographical areas' if the Commission finds, upon petition filed by an area television station or other interested person, that such extension would be contrary to the public interest. Temporary relief can be given pending the resolution of such a petition.
 
 
 12
 Section 74.1109 provides a procedure for waiver of the rules or the imposition of 'additional or different requirements' on an ad hoc basis. Temporary relief pending any hearing is also authorized.
 
 
 13
 Some variance exists in the attacks made by the various petitioners upon the rules and regulations adopted by the FCC in its First and Second Reports. For the sake of brevity, we will not separately state the contentions made by each of the petitioners but will summarize and discuss the substantial points made by any petitioner or the intervenor, National Community Television Association, Inc.
 
 
 14
 As a basis for upsetting the rules and regulations promulgated, the following points are asserted:
 
 
 15
 1. The FCC lacks statutory authority and jurisdiction to regulate CATV systems.
 
 
 16
 II. The rules adopted violate rights guaranteed the petitioners by the First and Fifth Amendments.
 
 
 17
 III. The rules were promulgated without adequate notice and opportunity to participate, in violation of 14(a), (b) and (c) and 3(a)(3) of the Administrative Procedure Act.
 
 
 18
 IV. The selection of February 15, 1966, as the effective date of 74.1107 makes such rule an invalid retroactive law.
 
 
 19
 V. The non-duplication and carriage rules are inconsistent with copyright laws and hence, invalid.
 
 
 20
 VI. The rules are unreasonable and discriminatory in their operation and therefore invalid.
 
 
 21
 We shall consider the points just set out in the order above stated. For reasons assigned hereinafter, we find the rules are not vulnerable to the attack made thereon and that the action of the Commission should be affirmed.
 
 I.
 
 22
 The threshold issue of whether the FCC has authority or jurisdiction to regulate CATV systems is raised by all petitioners. Such issue, which the FCC and the courts have found to be an extremely troublesome one, has now been authoritatively resolved by the Supreme Court in Southwestern Cable. In that case, the Supreme Court, after a full discussion and consideration of the question of whether the Communications Act of 1934 as amended, 47 U.S.C. 151 et seq., confers jurisdiction upon the FCC to regulate CATV systems, concludes:
 
 
 23
 'We therefore hold that the Commission's authority over 'all interstate * * * communications by wire or radio' permits the regulation of CATV systems.
 
 
 24
 'There is no need here to determine in detail the limits of the Commission's authority to regulate CATV. It is enough to emphasize that the authority which we recognize today under 152(a) is restricted to that reasonably ancillary to the effective performance of the Commission's various responsibilities for the regulation of television broadcasting. The Commission may, for these purposes, issue 'such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law,' as 'public convenience, interest or necessity requires.' 47 U.S.C. 303(r).' 392 U.S. 157, 178, 88 S.Ct. 1994, 2005.
 
 
 25
 The CATVs involved in Southwestern Cable were off-the-air operations. All petitioners in our present case except Black Hills Video Corporation are off-the-air operations. Black Hills Video Corporation engages in a microwave operation.
 
 
 26
 We have no doubt that the reasoning upon which Southwestern Cable is based fully supports the regulation of microwave fed CATV systems as well as off-the-air systems. It is conceded by petitioners that Commission authorization is a prerequisite to microwave transmission. See Carter Mountain Transmission Corp. v. F.C.C., 116 U.S.App.D.C. 93, 321 F.2d 359.
 
 
 27
 The Commission in its First Report asserted jurisdiction to regulate microwave fed CATVs and by its Second Report jurisdiction was extended to off-the-air CATVs. The Supreme Court in footnote 24 to Southwestern Cable states, 'It must also be noted that the CATV systems involved in these cases evidently do not employ microwave. We intimate no views on what differences, if any, there might be in the scope of the Commission's authority over microwave and nonmicrowave systems.' 392 U.S. 157, 167, 88 S.Ct. 2000. We do not interpret the statement just quoted as casting doubt upon the Commission's authority to regulate microwave fed CATVs. From the briefs of the parties, it would appear that all are in agreement that a stronger case is made for regulating microwave fed CATVs than is made with respect to off-the-air CATVs.
 
 II.
 
 28
 Petitioners' contentions that the regulations adopted violate their constitutional rights lack merit. The asserted claim of violation of the First Amendment right to free speech is adequately answered in National Broadcasting Co. v. United States, 319 U.S. 190, 227, 63 S.Ct. 997, 87 L.Ed. 1344, as follows:
 
 
 29
 'The right of free speech does not include, however, the right to use the facilities of radio without a license. The licensing system established by Congress in the Communications Act of 1934 was a proper exercise of its power over commerce. The standard it provided for the licensing of stations was the 'public interest, convenience, or necessity.' Denial of a station license on that ground, if valid under the Act, is not a denial of free speech.'
 
 
 30
 See Buckeye Cablevision, Inc. v. F.C.C., D.C.Cir., 387 F.2d 220, 225.
 
 
 31
 The Commission's effort to preserve local television by regulating CATVs has the same constitutional status under the First Amendment as regulation of the transmission of signals by the originating television stations. It is irrelevant to the Congressional power that the CATV systems do not themselves use the air waves in their distribution systems. The crucial consideration is that they do use radio signals and that they have a unique impact upon, and relationship with, the television broadcast service. Indiscriminate CATV development, feeding upon the broadcast service, is capable of destroying large parts of it. The public interest in preventing such a development is manifest.
 
 
 32
 The answer to the contention that the regulations adopted constitute a taking of petitioners' property without compensation, in violation of the Fifth Amendment, is that CATVs are under the Communications Act subject to reasonable regulations related to the Act's objectives. In Chicago, Burlington & Quincy Ry. v. State of Illinois, 200 U.S. 561, 593, 26 S.Ct. 341, 350, 50 L.Ed. 596, the Court states:
 
 
 33
 'If the injury complained of is only incidental to the legitimate exercise of government powers for the public good, then there is no taking of property for the public use, and a right to compensation, on acount of such injury, does not attach under the Constitution.'
 
 
 34
 See Federal Radio Comm. v. Nelson Brothers Bond & Mortgage Co., 289 U.S. 266, 282, 53 S.Ct. 627, 77 L.Ed. 1166; Trinity Methodist Church, South v. Federal Radio Comm., 61 App.D.C. 311, 62 F.2d 850, 853.
 
 
 35
 Our determination in other divisions of this opinion that the regulations adopted are reasonable and within the authority of the Commission, in light of the authorities just cited, compels a conclusion that no violation of petitioners' Fifth Amendment rights has been established.
 
 
 36
 III & IV.
 
 
 37
 The contention here made with respect to the invalidity of the rules and regulations for failure to observe provisions of the Administrative Procedure Act and the further contention that the rules constitute an invalid retroactive regulation because the cut-off date for the grandfather rights was fixed as of February 15, 1966, the date of the announcement of the policy rather than the date the new rules became effective were made and rejected in Buckeye Cablevision, Inc., supra, at pp. 226 to 228 of 387 F.2d. We reject the contentions here made for the same reason that these contentions were rejected in Buckeye.
 
 V.
 
 38
 The non-duplication and carriage rules are not illegal because of claimed inconsistency with the Copyright Act. The claim with respect to carriage may be disposed of summarily. Fortnightly Corp. v. United Artists Television, Inc., 392 U.S. 390, 88 S.Ct. 2084, 20 L.Ed.2d 1176, holds that CATV, like viewers and unlike broadcasters, does not perform the programs it receives and carries. Consequently no copyright infringement liability exists on CATV operators for carrying programs of television stations as required by the carriage rule.
 
 
 39
 The non-duplication rule which, subject to certain specified exceptions, prohibits duplication of programs on the same day that they are presented by the local station is not invalidated by the copyright laws. Cases relied upon by petitioners, such as Sears, Roebuck v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, hold that state unfair competition laws with respect to unpatented items were unenforceable because a conflict prevails between state and federal law, and federal law controls under the supremacy clause. Here the conflict if any is between two federal laws and at most the issue is whether the Commission's power to regulate non-duplication under powers granted it by the Federal Communications Act is inconsistent with federal policy underlying the Copyright Act. Petitioners have not shown that the non-duplication requirement, which the Commission found was needed to further the public interest in the broadcasting field, is inconsistent with the policy underlying the Copyright Act.
 
 VI.
 
 40
 Petitioners have failed to demonstrate that the rules and regulations promulgated by the Commission are unreasonable and discriminatory. Administrative rules and regulations adopted in carrying out duties imposed upon a commission by statute are entitled to considerable respect. As stated by the Supreme Court in United States v. Storer Broadcasting Co., 351 U.S. 192, 203, 76 S.Ct. 763, 770, 100 L.Ed. 1081, 'The growing complexity of our economy induced the Congress to place regulation of businesses like communication in specialized agencies with broad powers. Courts are slow to interfere with their conclusions when reconcilable with statutory directions.'
 
 
 41
 Here, as in National Broadcasting Co., supra, the Commission recognized that the rules adopted would not solve all public interest problems and it did not bind itself inflexible to the rules prescribed. Near the conclusion of its Second Report, the Commission states:
 
 
 42
 'In this connection, we stress that we are not committed to the status quo-- to protecting existing investment against new technological advances. The whole history of this art has been one of great change, from radio to television to perhaps tomorrow satellite broadcasting or laser communication. It may be that CATV, if allowed full unfettered growth, would prove to be an excellent supplement, bringing additional service and diverse programming to millions of people in built-up areas who can afford it, without detriment to the provision of additional local broadcasting service to the entire Nation. If so, the information obtained in the hearing process will provide that indication, and will be the basis for authorizing such growth. But we cannot make that judgment in the record now before us-- and, instead of the above picture of wire television as an excellent supplement, there is the possibility that the Nation might find itself with a system half wire, half free, which is destructive of the larger goals of additional networks, additional outlets for local expression, and which provides increased service to some in the city at the expense of those in the rural area or those who cannot afford to pay.' 2 F.C.C.2d 788-89.
 
 
 43
 In Southwestern Cable, the Court recognizes that 'the administrative process (must) possess sufficient flexibility to adjust itself' to the 'dynamic aspects of radio transmission,' and goes on to hold 'the Commission has been explicitly authorized to issue 'such orders, not inconsistent with this (Act), as may be necessary in the execution of its functions." 392 U.S. 157, 181, 88 S.Ct. 2007.
 
 
 44
 Our determination in prior divisions of this opinion that the rules violate no constitutional rights of the petitioners, that adequate notice and opportunity to be heard on the adoption of the rules was afforded, and that the rules are not inconsistent with federal copyright laws, all lend support to the reasonableness of the rules adopted.
 
 
 45
 The Commission's First and Second Reports reflect the necessity for and the nature of rules required to protect the public interest were given fair and extensive consideration. Detailed discussion of such reports would unduly prolong this opinion. The Reports reflect that substantial basis exists for the Commission's determination that the perpetuation of the mushrooming multiple channel CATV service would impair the existence and development of local television stations by splintering the audience of such stations, thus preventing the local stations from attracting the number of viewers necessary for their economic survival. Without such local stations, many viewers who could not afford CATV charges and others beyond areas where cable connections could be economically provided would be deprived of television service. Such a result would be contrary to the public interest. Protection of public interest in the television field is clearly a responsibility of the Commission under the Federal Communications Act.
 
 
 46
 The Commission's Reports reflect that the rules adopted are designed to protect the public interest and that great care has been exercised not to make the rules place any unfair or unconstitutional burden on CATVs. For example, the nonduplication rule promulgated by the First Report prohibited CATV carriage of a program carrier by a local station for fifteen days before and after the local broadcast. Such rule has been modified by the Second Report to restrict duplication to the day of the local broadcast and certain exceptions have been made even to such provision.
 
 
 47
 The Commission recognizes that the impact of the rules varies with circumstances, and provisions are made for exemptions from particular rules on the showing of no need for the application of the rule, and provision is made for evidentiary hearings in a number of instances.
 
 
 48
 We have considered all contentions urged by the petitioners, including those raised and not herein specifically discussed. We hold the Commission operated within its statutorily conferred jurisdiction in adopting the rules and regulations here attached, and that the petitioners have failed to establish that the rules and regulations are invalid in any respect.
 
 
 49
 The action of the Commission is affirmed.
 
 
 
 [1]
 Rules adopted in 1959 which were in effect until July 1, 1968
 
 
 [2]
 38 F.C.C. 683
 
 
 [3]
 2 F.C.C. 2d 725
 
 
 [4]
 6 F.C.C. 2d 309
 
 
 [5]
 Case No. 18,052 seeking review of the First Report and Order was originally argued and submitted to this Court on November 18, 1965. Following the issuance of the Second Report and Order, the submission of such case was vacated
 
 
 [6]
 All section citations are to 47 CFR