**THOMPSON VAN LINES, INC., and Alexander B. Pollock, d/b/a Jiffy Vans, et al., Plaintiffs,**

v.

**UNITED STATES of America, and the Interstate Commerce Commission, Defendants.**

Civ. A. No. 74–860.

United States District Court, District of Columbia.

June 27, 1974.

Herbert Burstein, New York City, Joseph Rotwein, Washington, D. C., for plaintiffs.

Peter A. Fitzpatrick, Charles H. White, Jr., Attys., I. C. C., Washington, D. C., for defendants.

## ORDER

FLANNERY, District Judge.

This matter is before the court on plaintiffs' motion for a temporary restraining order. Plaintiffs ask the court to stay the Interstate Commerce Commission's order of February 15, 1974, in Motor Common Carriers of Property, Routes and Service, Ex Parte No. 55 (Sub-No 8). Defendants have opposed the motion and oral hearing has been held.

Plaintiffs are motor common carriers engaged in interstate transport of household goods. For many years the Interstate Commerce Commission has permitted carriers such as plaintiffs, who have been issued certificates of public convenience and necessity over two separate routes with at least one common point, to combine the routes and to transport goods over the entire authorized routes. Thus, if a carrier has authority to carry from A to B and separate authority to carry from B to C, then the carrier has been allowed to carry directly from A to C by "tacking" authorities at the "gateway," B. In March 1973, on petition of 42 motor common carriers, the Interstate Commerce Commission initiated a rule-making proceeding to consider elimination of gateways. After a full and admittedly fair rule-making proceeding, the Interstate Commerce Commission issued its Gateway Elimination rules based largely on the desirability of fuel conservation. The most important provision was that if the A to C route via gateway was over 20 percent longer than the most direct route, the carrier could no longer provide through service. If the most direct route was within 20 percent of the route through the gateway, then direct service could be maintained, but with carriers directed to serve the distant destination directly and not via the gateways. By filing a petition with the Interstate Commerce Commission, a carrier may seek special authorization to continue to carry via gateways and may do so until the Interstate Commerce Commission rules on such application.

Plaintiffs contend that this Interstate Commerce Commission rule has effected a change in their certificates of public interest and necessity in violation of 49 U.S.C. § 312 which provides for notice and hearing prior to any change in certificates. It is because of this alleged defect in the Interstate Commerce Commission procedure that plaintiffs ask the court to issue a temporary restraining order. In considering whether to issue such an order, the court applies the criteria set forth in Virginia Petroleum Jobbers Association v. F. P. C., 104 U.S. App.D.C. 106, 259 F.2d 921 (1958): whether plaintiffs have made a substantial showing that they are likely to prevail on the merits; whether plaintiffs will suffer irreparable injury if temporary relief is not granted; whether other parties will suffer substantial harm if temporary relief is granted; and whether such relief lies within the public interest.

The first and most difficult question presented in this motion for a temporary restraining order is whether plaintiffs have shown a strong likelihood that they will prevail on the merits. The court considers the key to this question to be whether the Interstate Commerce Commission, despite 49 U.S.C. § 312, could proceed by rule making rather than individual adjudication. The court concludes that plaintiffs have not met their burden.

The Interstate Commerce Commission chose to proceed by rule making rather than individual adjudication apparently because considerably less time would be involved and, more importantly, because the rule they sought to promulgate would be policy oriented—one related to a gen-

eral finding of public convenience and necessity—rather than one directed only towards specific carriers. The court finds that the precedent cited by both parties are not precisely on point. The Interstate Commerce Commission relies chiefly on Chemical Leaman Tank Lines, Inc. v. United States, 368 F.Supp. 925 (D.Del.1973). While that court strongly supported rule making as a device to conserve agency resources and to adopt policy positions, that case is not controlling because no carrier was required to do or refrain from doing anything. Similarly, the cases cited by plaintiffs relate generally to attempts to change individual certificates without notice and hearing, rather than with situations in which the Interstate Commerce Commission has issued regulations applicable to all carriers.

■■ The court notes that where an agency enunciates general standards for an entire industry, there is a strong preference for allowing rule making rather than requiring time-consuming and repetitive adjudication. *See* United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1955); FPC v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1963). This policy has been held to apply in this Circuit even where plaintiffs have contended that the rule making affected rights under existing certificates. *See* American Airlines, Inc. v. CAB, 123 U.S.App.D.C. 310, 359 F.2d 624 (1966) (en banc) and cases cited therein. The court stated that such preference for rule making

> rests on a fundamental awareness that rule making is a vital part of the administrative process, particularly adapted to and needful for sound evolution of policy in guiding the future development of industries subject to intensive administrative regulation in the public interest, and that such rule making is not to be shackled, in the absence of clear and specific Congressional requirement, by importation of formalities developed for the adjudicatory process and basically unsuited for policy rule making. *Id.* at 629.

The statutory provision in *American Airlines* was similar to that in the present case in calling for notice and hearing prior to change in certificate. *See* 49 U.S.C. § 1371(g). This was not a sufficiently clear and specific Congressional requirement which would forbid rule making. Similarly, in the present case the provision in 49 U.S.C. § 312 does not absolutely prohibit rule making. The *American Airlines* court further stated why rule making was sufficient protection to carriers where general policy formulation is involved.

> Where the agency is considering an order against a particular carrier or carriers there is protection through the requirement of the adjudicatory procedure . . . . Where the agency is considering a general regulation, applicable to all carriers, or to all carriers within an appropriate class, then each carrier is protected by the fact that it cannot be disadvantaged except as the Board takes action against an entire class. 359 F.2d at 631.

*See also* Regular Common Carrier Conference v. United States, 307 F.Supp. 941 (D.D.C.1969).

While *American Airlines* certainly presented somewhat different issues than those in the present case, the policies therein indicate that in this Circuit an agency has considerable leeway to proceed via rule making where it is prescribing rules and regulations for an entire class of carriers. Whether the present case, because of greater affirmative action required by plaintiffs, greater effect on their certificates, or diversity of the class affected by the regulation, is sufficient to justify a departure from *American Airlines* is better left for trial on the merits.

■ In addition to this court's finding that plaintiffs have not met the first criteria of *Virginia Petroleum,* the court also finds that plaintiffs have failed to satisfy any of the other criteria. Plain-

tiffs have not demonstrated irreparable injury. Plaintiffs have claimed injury only through affidavit of their attorney who states no more than "plaintiffs will be precluded from conducting a portion of their operations . . . ." Affidavit, filed June 7, 1974. However, absent more specific information, this court gets no sense of the degree of injury and on oral hearing counsel failed to supply such data. Thus, it is impossible, even assuming injury, to conclude that such injury would be irreparable.

Further, the court agrees with defendants that a temporary restraining order might substantially injure other members of the motor carrier industry. In compliance with the new regulation, over 7900 applications to eliminate gateways have been filed and 1180 have become effective. Given this substantial effort by other carriers—and no effort by plaintiffs to get authority to continue to carry via gateways—the court concludes that temporary relief would possibly cause substantial injury to the rest of the industry.

Finally, the court concludes that the public interest clearly lies with denial of plaintiffs' motion. As the Interstate Commerce Commission report repeatedly emphasizes, this regulation will result in substantial savings of fuel. The court takes note that this country has had and may still have an energy crisis and is currently pursuing a policy of total energy self-sufficiency. *See* 9 Weekly Compilation of Presidential Documents 1363, 1366 (Nov. 25, 1973) (President's Address to the Nation Announcing Additional Actions to Deal with the Energy Emergency). Any substantial savings of fuel will further that important policy and clearly is within the public interest.

Accordingly, it is this 27th day of June, 1974,

Ordered that plaintiffs' motion for a temporary restraining order be, and the same hereby is, denied.