**THOMPSON VAN LINES, INC., and Alexander B. Pollock, d/b/a Jiffy Vans, Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

Civ. A. No. 74–860.

United States District Court,
District of Columbia.

April 28, 1975.

**1132**

Joseph Rotwein, Washington, D. C., Herbert Burstein, Zelby & Burstein, New York City, for plaintiffs.

John H. D. Wigger, Atty., Dept. of Justice, Anti-trust Div., U. S. Dept. of Justice, Peter A. Fitzpatrick, Charles H. White, Jr., I. C. C., Washington, D. C., for defendants.

Before McGOWAN, Circuit Judge, and FLANNERY and WADDY, District Judges.

## MEMORANDUM OPINION

FLANNERY, District Judge:

This matter came before the court for hearing on the merits after briefing by the parties.[1] Previously, plaintiffs sought but were denied a temporary restraining order. *See* 381 F.Supp. 184 (D.D.C.1974). Many of the relevant facts are set forth in the denial of the temporary restraining order and will not be repeated here. The court has jurisdiction under 28 U.S.C. § 1336 to hear this appeal from the Interstate Commerce Commission [ICC] proceeding. Pursuant to 28 U.S.C. §§ 2325, 2284, a three-judge court was convened.

The plaintiffs, irregular-route motor common carriers engaged in interstate transportation of household goods, seek to enjoin the ICC order issued in *Motor Common Carriers of Property, Routes and Service*, Ex Parte No. 55, Feb. 25, 1974, otherwise known as *Petition for the Elimination of Gateways by Rulemaking*. Upon petition from motor carriers the ICC, after initial investigation, commenced a rule making proceeding for the purpose of altering long-standing Commission policy regarding tacking at gateways. For many years the ICC permitted, but did not compel irregular motor carriers holding two separate certificates of public convenience and necessity to tack or combine the two routes if the routes had at least one point in common. In 1961, in *Motor Common Carriers of Property—Routes and Service*, 88 M.C. C. 415, 423–44 (1961) the Commission stated:

> Irregular-route carriers are permitted to tack their separate grants of authority in order that they may more efficiently utilize their equipment and facilities, but they are not, nor can

---

1. Since no factual issues were in dispute, the court set up a briefing schedule so that the legal issues could be resolved. Although no motions for summary judgment were filed, the case is before the court as if on cross-motions for summary judgment.

they be compelled to do so. The general requirement that motor common carriers provide adequate service (this requirement is found in section 216(b) of the act and is specifically included in every certificate issued to a common carrier) does not extend to service which may be provided through a combination of authorities.

And the Commission later clarified the basis for the carriers' right to tack:

The right of a motor common carrier to provide a through service by combining two separate unrestricted irregular-route authorities at a point common to both was firmly established in *Transport Corp. of Virginia Extension—Maryland,* 43 M.C.C. 716, 719. This right does not accrue because a need for a through service is established. Rather, it exists because of the fact that if two separate operating authorities were held by different carriers both could participate in an interline movement; hence, if the separate unrestricted authorities are held by the same carrier it may render the same through service as the two carriers could perform by interline.

*Warren Transport, Inc., Extension—Dubuque to North Dakota,* 98 M.C.C. 761, 763 (1965). The Commission, while permitting tacking of certificates has held to the belief that in appropriate circumstances, it may, pursuant to 49 U.S.C. § 308, impose restrictions against tacking. *E. g., Warren Transport, Inc., Extension—Dubuque to North Dakota, supra* at 763. Indeed, in *Transport Corp. of Virginia Extension—Maryland,* 43 M.C.C. 716, 719 (1944), the Commission, while permitting tacking in that case, stated that such decision

should not be understood . . . as precluding the imposition by us in certificates of reasonable conditions against the rendition of through service in cases in which such conditions may be warranted by the evidence presented. Such power is specifically granted in section 208(a) [49 U.S.C. §

308] of the act, which authorizes us to impose in certificates such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier.

After years of permitting tacking, the ICC in 1973, in light of present-day problems of economy, environment, and the energy emergency, began to scrutinize the problem of permitting tacking in cases which resulted in undue circuity. The ICC tentatively decided that where the route via the gateway was considerably longer than the direct route motor carriers should be required to carry by the direct route, hopefully conserving much fuel in the process. The ICC was faced, however, with the problem of how to implement a change in its tacking policy and how to gain more information to determine finally that a change was in the public convenience and necessity. Relying upon its authority under 49 U.S.C. § 308(a), the ICC determined that:

[T]he most, and perhaps only, feasible manner in which to accomplish the requisite authorization of such necessary services is by means of a general rule of construction applicable to the carriers' outstanding certificates, based upon a finding of public convenience and necessity on a national scale and containing appropriate safeguards against the conduct of operations which result, or which are reasonably certain to result, in destructive competition.

The Commission was relying in large part upon the decision in *Removal of Truckload Lot Restrictions,* 106 M.C.C. 455 (1968), *aff'd, Regular Common Carrier Conference v. United States,* 307 F. Supp. 941 (D.D.C.1969), for its authority to proceed under 49 U.S.C. § 308(a). The Commission there had stated:

[T]he power to attach terms, conditions, and limitations to certificates conferred by section 208(a) is a broad

one; the standards are only that they must be reasonable, and that they must be either required by the public convenience and necessity or necessary to implement any requirements established under section 204(a)(1) and (6).

In affirming the decision the District Court stated:

> Contrary to plaintiffs' argument, no congressional mandate in the Interstate Commerce Act explicitly requires adjudication where a large number of certificates are affected at one stroke. Indeed, as the Commission noted . . ., Congress recognized that the Commission should be able to impose "such reasonable terms, conditions, and limitations" on certificates as the public convenience and necessity may *from time to time* require and expressly provided for such eventuality. 49 U.S.C. § 308(a)(1964). . . . The Commission should not be precluded from a periodic review on a national scale of certificates it has issued or from a determination whether the public interest requires a removal of certain limitations in the light of the public policy underlying the statute.

307 F.Supp. at 944–45 (emphasis in original).

The gateway elimination rule applies to all irregular-route motor common carriers whose certificates neither expressly permit nor prohibit tacking and provides in pertinent part that where circuity via gateways is too great, the carrier must observe the most direct route. This new policy is moderated somewhat under an ICC procedure that allows individual carriers to apply for permission to continue to carry via gateways. The plaintiffs in this action are irregular-route motor common carriers who have carried goods via gateways, depending upon the Commission's long-standing policy of permitting tacking at gateways. Under the new rule, however, plaintiffs will be unable to carry via gateways unless they obtain special permission. The plaintiffs admit that there exists a rational basis for the rule and that there is substantial evidence in the record supporting the rule. Further, plaintiffs admit that the rule making proceeding carried out under 5 U.S.C. § 553 was completely fair. However, plaintiffs assert that the gateway elimination rule operates to amend or to revoke a part of their certificates since they now are unable to tack at gateways. Plaintiffs assert that any amendment or revocation of certificates must be via an adjudicatory hearing following the procedures of 49 U.S.C. § 312. Since the adjudicatory procedures of section 312 admittedly were not followed, plaintiffs argue that the rule is invalid and must be set aside.

In its present posture this case presents only two issues. The first is whether the gateway elimination rule constitutes an amendment or revocation of certificates requiring an adjudicatory procedure or whether it is an example of a reasonable term or limitation which the Commission can from time to time impose as the public convenience and necessity require. Second, if the gateway elimination rule does effect an amendment or revocation of certificates, may the Commission nevertheless proceed by rule making under *American Airlines, Inc. v. CAB*, 123 U.S.App.D.C. 310, 359 F.2d 624 (1966).

As plaintiffs admit their certificates do not expressly confer the right to tack. Rather, plaintiffs have relied upon ICC policy to allow tacking. As stated earlier, where tacking has been permitted without express authorization in the certificate, there has been no finding that the public convenience or necessity required such service, and carriers need not provide such "tacked" service. Nevertheless, plaintiffs argue that by permitting tacking for a long period, tacking has become, in essence, a basic part of the certificates of public convenience and necessity of those who choose to tack and that by now greatly restricting the ability to tack, defendants have re-

voked or amended those certificates without following the procedures of 49 U.S.C. § 312.

Under 49 U.S.C. § 308(a) the Commission, after issuance of a certificate, may from "time to time thereafter" attach "to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier . . . ." It is admitted that the gateway elimination rule is in the public convenience and necessity and that under 49 U.S.C. § 308(a) the Commission, upon proper findings, may attach reasonable terms, conditions, and limitations to a carrier's certificate without complying with the procedures in 49 U.S.C. § 312. Obviously, a line must be drawn between those reasonable terms that the Commission may attach under 49 U.S.C. § 308(a) and those changes which would constitute an amendment or revocation under 49 U.S.C. § 312.

■ The court begins with the understanding that an agency's interpretation of its own rules or policies is entitled to great deference. It has been the Commission's interpretation since as early as 1944 that under 49 U.S.C. § 308(a) prohibition of tacking was one of the reasonable terms, conditions, and limitations that the Commission could impose where the public convenience and necessity required it. *See Transport Corp. of Virginia Extension—Maryland, supra* at 719. *See also Warren Transport, Inc., Extension—Dubuque to North Dakota, supra* at 763. Plaintiffs apparently agree that when a certificate of public convenience and necessity initially is issued, the ICC can prohibit tacking. However, once a carrier has exercised its right to tack, plaintiffs argue that that right cannot be taken away. But 49 U.S.C. § 308(a) expressly states that even after a certificate is issued, the Commission may make such reasonable changes or limitations as the public convenience and necessity require. Here it is admitted that the policy changes ordered in this matter are rational exercises of the agency's power to supervise motor carriers and that there is substantial evidence supporting the decision. As evidenced by the ICC's long-standing interpretation, this change of policy constitutes the kind of reasonable change or limitation upon the privilege of carrying goods which Congress instructed the Commission to make. As the court in *Regular Common Carrier Conference v. United States, supra* at 945, stated "[t]he Commission should not be precluded from a periodic review on a national scale of certificates it has issued or from a determination whether the public interest requires a removal of certain limitations in the light of the public policy underlying the statute."

■ The court is not persuaded that the right to tack constitutes a part of each carrier's certificate. As pointed out both in the Commission justification for the rule and at oral hearing, there are instances where the Commission expressly has found that tacking was required by the public convenience and necessity. Certainly in those cases tacking is a part of the certificate. However, in those cases where tacking merely has been permitted as a matter of general ICC policy without express incorporation in the certificate and without any finding that tacking is necessary for the public convenience or necessity, the court finds that tacking stands on a different level. It constitutes a right of the carriers to tack in this latter situation only so long as the general Commission policy continues. When that Commission policy changes, it revokes nothing contained in the carrier's certificate and nothing which the Commission previously has found to be necessary for the public convenience or necessity. Plaintiffs argue that while the Commission sometimes expressly authorizes tacking and other times merely permits it, the two situations are for all pur-

poses identical. In essence, plaintiffs feel that when the ICC has expressly authorized tacking in the past, it was meaningless. The court is unconvinced. Where tacking is not expressly authorized by certificate, the carrier is not compelled to do so. *Motor Common Carriers of Property—Routes and Service, supra* at 424. In contrast, where an express tacking provision appears in the certificate, the general requirement that the carrier provide adequate service would extend to service provided through a combination of authorities. *See id.* Indeed, the Commission itself, in the gateway elimination rules, acknowledged a difference between express tacking authorization in certificates and tacking permitted merely as a matter of ICC policy—the former certificates were not affected by the gateway elimination rules, presumably because there previously had been an express determination of need for that tacking in contrast to the tacking permitted merely on the basis of agency policy.

■■■■ In sum, the court finds that where carriers have tacked their authorities in the past, absent express tacking authorization in the certificates, such tacking does not constitute such a part of their certificates that subsequent change of ICC policy constitutes an amendment or revocation of the carriers' certificates. Rather, that change of ICC policy, consistent with long-standing ICC interpretation, constitutes the exercise of the ICC's obligation under 49 U.S.C. § 308(a) to attach reasonable terms and conditions to the privileges granted by the certificate. The court feels that the ICC must retain flexibility to reevaluate its policy and, where conditions require, to change that policy. In the instant case the agency was fair and thorough in its reevaluation of its gateway policy and all parties agree that the gateway elimination rule is supported by substantial evidence in the record and has a rational basis. Clearly the rule is in the public convenience and necessity. The court will uphold its validity.

■■ Even if the court concluded that tacking constituted such a part of a carrier's certificate that its curtailment effected an amendment or revocation of certificates, the court still would uphold the rule in question. In its denial of the temporary restraining order, the court ruled that plaintiffs failed to show likelihood of success on the merits because of *American Airlines v. CAB, supra,* where the District of Columbia Circuit, *en banc,* ruled in similar circumstances that the Civil Aeronautics Board could proceed by rule making rather than adjudication. In denying the temporary restraining order this court quoted extensively from *American Airlines* and noted only the following reservation:

> Whether the present case, because of greater affirmative action required by plaintiffs, greater effect on their certificates, or diversity of the class affected by the regulation, is sufficient to justify a departure from *American Airlines* is better left for trial on the merits. 381 F.Supp. at 186.

After considering this case in greater detail, the court concludes that the rationale of *American Airlines* is applicable to the instant case.

In *American Airlines* the plaintiffs, as in this case, argued that the CAB action constituted an amendment to their certificates which could be done only by adjudication. Plaintiffs in the instant case argue that *American Airlines* is distinguishable because plaintiffs' argument in *American Airlines* was "palpably without merit." However, Judge, now Chief Justice, Burger, joined by two other Judges, each felt that the issue presented by the case was one of amending certificates by rule making. And in *National Petroleum Refiners Association v. FTC,* 157 U.S.App.D.C. 83, 482 F.2d 672, 679 (1973), this Circuit described *American Airlines* as a case in which the CAB could "utilize substantive rules affecting allocation of air cargo business among different types of air carriers to modify existing certificates without the full adjudicatory hearing

contemplated by the agency's statute." This court finds *American Airlines'* rationale to be indistinguishable from and applicable to the instant case.

In this case plaintiffs have not even attempted to show how an adjudicatory hearing would have better protected their alleged rights. Rather, it appears clear that here, as in *American Airlines, supra* at 629–31, the agency was concerned with policy rule making rather than focusing on evidentiary facts relating to a particular party. Here, as in *American Airlines*, the proposed rule was applicable to an entire class of certificate holders. Plaintiffs have argued that since some irregular-route motor carriers may continue to tack under the new rule and others may not depending on the degree of circuity, that the rule does not apply to an entire class and that adjudicatory safeguards should have been applied. However, the Supreme Court recently in *United States v. Florida East Coast Railway*, 410 U.S. 224, 245–46, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), dealt with the question of when an order or rule has general applicability.

> Here, the incentive payments proposed by the Commission in its tentative order, and later adopted in its final order, were applicable across the board to all of the common carriers by railroad subject to the Interstate Commerce Act. No effort was made to single out any particular railroad for special consideration based on its own peculiar circumstances. Indeed, one of the objections of appellee Florida East Coast was that it and other terminating carriers should have been treated differently from the generality of the railroads. But the fact that the order may in its effects have been thought more disadvantageous by

some railroads than by others does not change its generalized nature.

Similarly, in the instant case certain irregular-route motor carriers feel more disadvantaged by the rule than others but that does not change the fact that the gateway elimination rule applies equally to all carriers. As stated in *American Airlines, supra* at 631, "each carrier is protected by the fact that it cannot be disadvantaged except as the Board takes action against an entire class."

In the instant case it is indeed true that carriers, as a result of the ICC rule, will now be forced to stop tacking unless special permission is obtained. However, this is not such a circumstance as would distinguish *American Airlines*. The *American Airlines* court, in explaining the rationale enunciated by the Supreme Court in *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), stated

> [T]he *Storer* doctrine . . . rests on a fundamental awareness that rule making is a vital part of the administrative process, particularly adapted to and needful for sound evolution of policy in guiding the future development of industries subject to intensive administrative regulation in the public interest, and that such rule making is not to be shackled, in the absence of clear and specific Congressional requirement, by importation of formalities developed for the adjudicatory process and basically unsuited for policy rule making. 359 F.2d at 629.

The court finds that elimination of gateways by rule making was an appropriate exercise of the ICC's rule making authority and the decision appealed from will be affirmed.