**DART TRUCKING COMPANY, INC., Petitioner,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 75–2411.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 11, 1977.

Decided March 18, 1977.

As Amended May 20, 1977.

Richard L. Goodman, Paul F. Beery Co., L.P.A., Columbus, Ohio, for petitioner.

Christine N. Kohl, Carl E. Howe, Jr., Gen. Counsel, I.C.C., Washington, D.C., Edward Levi, Atty. Gen. of U. S., Dept. of Justice, Washington, D.C., for respondents.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

1. That is, "unrestricted" as to tacking.

2. Upheld in *Thompson Van Lines, Inc. v. United States,* 399 F.Supp. 1131 (D.D.C.1975), aff'd

PER CURIAM.

This is an action by Dart Trucking Co., Inc., a motor carrier, to review and set aside orders of the Interstate Commerce Commission entered in its Docket No. MC–121420 (Sub. Nos. E1 and E2). The Commission refused to eliminate certain of Dart's gateways which would have effected the announced ICC policy of reducing operating mileage and saving fuel. The sole ground stated by the Commission for its action is that Dart's "letter-notices" were filed too late.

For many years the Commission permitted irregular-route motor common carriers to combine or "tack" separate and unrestricted [1] operating authorities at their common points, i. e., gateways, so as to render a through service. The Commission never required carriers to offer such a through service, but acquiesced in the practice of the carriers that offered it.

Many gateway operations involved circuitous routings. It was necessary for the carrier to operate through its gateways, no matter how many miles might have been saved by using a more direct route.

With the advent of the 1973–74 fuel crisis, the Commission adopted a policy of permitting more direct routes on gateway operations by irregular-route carriers. The brief of the Commission in the present case states: "The Environmental Protection Agency estimated 'that motor carriers would be able to save approximately 300 million gallons of fuel a year by operating directly." The Commission promulgated regulations [2] providing as follows:

(1) Movements of 300 miles or less are exempt from the regulations. Tacking operations may still be performed; however, the carriers had the option of seeking authority under the rules to operate directly, without observance of gateways, by either a letter-notice filing or an application. 49 C.F.R. § 1065.1(b).

423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976). *See also* 119 M.C.C. 530 (1974) and 119 M.C.C. 170 (1973).

(2) Where the most direct highway distance between the points to be served was at least 80 per cent of the highway distance between such points over the carrier's authorized routing through the gateway, the carrier could file a "letter notice" seeking authorization to operate directly. 49 C.F.R. § 1065.1(d)(1).

(3) Where the most direct highway distance between the points to be served was less than 80 per cent of the highway distance between such points over the carrier's authorized routing through the gateway (i.e., greater circuity was involved in the tacking operation), the carrier was required to file a gateway elimination "application" and to satisfy stricter evidentiary criteria. 49 C.F.R. § 1065.-1(d)(2).

Dart, the petitioner in the present case, is in the unfortunate position of having filed two letter-notices both too early and too late. The first notices, filed prior to June 4, 1974, were returned by the Commission to Dart with the explanation that the notices were premature and could not be processed because of the absence of a certificate, which was not issued by the Commission until December 26, 1974. Dart was informed that it had sixty days subsequent to the issuance of the certificate to file appropriate letter-notices. Under the deadline, Dart had until February 24, 1975, to re-file its letter-notices, but due to an oversight, failed to do so until 76 days after the deadline prescribed by the Commission. The letter-notices were rejected by the Commission because of tardiness in filing. Two petitions for reconsideration were denied by the Commission.

Dart thereupon initiated the present proceedings, contending that the action of the Commission was arbitrary and capricious. It is argued that: (1) Dart made a good faith attempt to eliminate its gateways by its first filing, which the Commission rejected as premature; (2) that the denial of the request is inimical to the goals of the Gateway Elimination Rules; and (3) that no party would have been harmed if the Commission had accepted the letter-notices.

Dart relies upon *Squaw Transit Co. v. United States and the Interstate Commerce Commission,* 402 F.Supp. 1278 (N.D.Okl. 1975). *See also Keen Transport, Inc. v. United States of America and Interstate Commerce Commission,* 1976 F.Carr. Cases P82,621 (N.D.Ohio 1976). Dart contends that, after the decision in *Squaw,* the Commission modified its Gateway Elimination Rules so as to accept all late tendered evidence in application cases, but not letter-notice cases. Dart argues that the same rationale should apply in letter-notice cases, as in application cases.

█ Dart has made an appealing case on the merits and equities of its contentions. However, the judges of this court do not sit as members of the Interstate Commerce Commission or review its decisions de novo. We must decide this case, not by the standard of how we would have voted if we had been members of the Commission, but under our extremely limited scope of judicial review. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

█ We cannot say that the Commission does not have authority to prescribe reasonable time limits in its proceedings, with adequate notice to carriers, or that it acted arbitrarily and capriciously when it enforced its own rules by rejecting letter-notices filed 76 days too late.

The decision of the Commission is affirmed, but without prejudice to any rights that Dart may have to renew or pursue its efforts to eliminate gateways and achieve the Commission's laudable objective of motor fuel conservation.

No costs are taxed.